118 N.J. Super. 215 (1972)
287 A.2d 183
IN THE MATTER OF NEWARK TEACHERS UNION, LOCAL 481 AMERICAN FEDERATION OF TEACHERS AFL-CIO, AN UNINCORPORATED ASSOCIATION, DEFENDANT CHARGED WITH CONTEMPT OF COURT. CAROLE GRAVES (AND 15 OTHERS), CHARGED WITH CONTEMPT OF COURT.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1972.
Decided February 8, 1972.
*218 Before Judges SULLIVAN, LEONARD and CARTON.
Mr. Morton Stavis and Mr. Morris Stern argued the cause for appellants (Mr. Paul J. Giblin and Mr. Morton Stavis, attorneys).
Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney; Mr. David Noah Dubrow of counsel and on the brief).
*219 PER CURIAM.
During the 1971 Newark teachers strike which commenced February 2, 1971 and lasted until April 8, 1971, defendants were charged with contempt in that they willfully violated a final judgment of the Superior Court entered on February 27, 1970 which permanently enjoined the Newark Teachers Union, Local 481, its members, officers and directors, including certain named individuals, from participating in any strike, work stoppage, picketing, etc., against the Board of Education of Newark.
Hearings were held on the charges of contempt. At the conclusion thereof the trial court found in essence that each defendant had actual knowledge of the terms and conditions of the final judgment of February 27, 1970 but had nevertheless intentionally and deliberately participated in the 1971 strike activities and was guilty of the contempt charged. A fine, which ultimately amounted to $270,000, was imposed on the union. Twelve of the 15 individuals received six-month jail sentences and fines of $500. Defendant Fiorito, who was convicted of two separate contempts during the 1971 strike, was sentenced to two consecutive six-month jail terms and fined a total of $1,000. Defendants Bizzaro and Del Grosso received three-month terms and fines of $250.
We have carefully reviewed the entire record of proceedings de novo, and reach the following independent findings and conclusions as to guilt and punishment.
It is clear that each defendant had actual knowledge of the terms and provisions of the February 27, 1970 final judgment. That judgment in clear language manifested the intention of the court to prohibit participation in future strikes as well as the one then recently in progress. That that interpretation was not inadvertent is evidenced by the colloquy between the court and counsel for defendants at the time it was entered. The entry on February 3, 1971 of the cease and desist order and its subsequent service on the union and various individual defendants further emphasized and brought home to them the fact that the injunction was intended to apply to the 1971 strike. Nevertheless, they continued *220 to defy its mandate. Thus, each of the defendants willfully and knowingly violated its terms by actually supporting and participating in the 1971 strike and is guilty of contempt. The record also establishes Fiorito's guilt of two separate contempts.
Defendants contend that regardless of their knowledge concerning its scope, the injunction was unconstitutional because (1) it was overbroad in that it barred future strikes, and (2) they were not given a hearing on the enforceability of the injunction where they might present new evidence. Both arguments are without merit.
We recognize that in the sensitive area of labor disputes the scope of the injunction should be carefully tailored to the factual situation from which the litigation sprang. Otherwise such injunctive orders may become overbroad or stale in their application to a later strike. Consequently, the better practice is for the employer to seek fresh relief. Thus, in the present case, when the 1971 strike materialized, it would have been better practice to file a new complaint with supporting affidavits setting forth the new factual situation and on this basis to seek a new injunction. However, we conclude that the 1970 final judgment, entered less than a year before the 1971 strike against the same union and its members, officers and directors, was efficacious in the particular circumstances here presented.
Defendants contend that they were entitled to a hearing on the enforceability of the injunction where they could present evidence that, in the negotiations for a new contract, the board of education was not bargaining in good faith and was using a strategy of forcing the teachers to strike so that they would lose public support.
If this was the board's plan it was reprehensible. However, assuming there was some basis for the teachers' contention, that was no excuse to violate the final judgment of February 27, 1970. The matter was not between private parties where issues of clean hands and good faith would be material. It concerned a public school system, and the continued *221 public interest in having the schools remain open and the children educated.
As we have already noted, defendants had actual knowledge that the 1970 injunction was deemed applicable to the 1971 strike. If defendants intended to challenge its applicability to the 1971 context and, more specifically, to assert that a new situation had arisen with respect to the bargaining negotiations under the new contract, their remedy was to apply to the court to make that challenge before violating the outstanding injunction and to seek the court's assistance in requiring the board to negotiate in good faith. They were not free to defy the court order and take the law in their own hands. Walker v. Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).
We are satisfied from all of the proofs that defendant James Lerman was the individual identified as being on strike and in the picket line shown on photographic exhibit P-4.
We turn to the fines and jail sentences imposed by the trial court. It is clear that those participating in the 1971 strike have had brought home directly and emphatically the disastrous consequences of their illegal strike activity. However, of the 15 individual defendants herein, ten of them were also convicted of contempt in the 1970 strike proceedings. The union, of course, was also convicted in both the 1970 and 1971 contempt proceedings. We concur in the sentence imposed on the union by the trial court and adopt it as our own. Accordingly, a fine of $270,000 is hereby imposed on appellant Newark Teachers Union. Defendants Nicholas, Graves, Lasus, Lerman, Tur, Kirschbaum, Zimmer, Watkins and Washington, who were also convicted of contempt in 1970, are each hereby sentenced to three months in the Essex County Penitentiary and fined $500. Defendants Dasher, Koplin and Volpe, who, as officers of the union, were specifically named in the February 27, 1970 final judgment, are each hereby sentenced to three months in the Essex County Penitentiary and fined $500. Appellant *222 Fiorito, who has been found guilty of two separate contempts during the 1971 strike and was also convicted of contempt during the 1970 strike, is hereby sentenced to a term of three months in the Essex County Penitentiary and fined $500 on each contempt. The jail terms hereby imposed on him run consecutively. His sentence will aggregate six months in jail and a total fine of $1,000. Defendants Bizzaro and Del Grosso are each hereby sentenced to one month in the Essex County Penitentiary and fined $250. Each individual defendant is placed on probation for one year. The only condition will be that the person refrain from participating in any illegal activity, including but not limited to striking or work stoppage in connection with his or her employment by the board of education.
It is unfortunate that resort must be had to contempt of court procedure in this type of situation. Jailing teachers is not the answer to school strikes. The solution is legislative. Public employees have the right to bargain collectively as to the terms and conditions of their employment but cannot do so on equal terms with their employment unit since they have no means of negotiating from a position of strength. If the present policy prohibiting strikes by public employees is to be continued, machinery for the compulsory settlement of deadlocked labor disputes involving public employees should be established. For a discussion of the problem and suggestions as to possible alternatives, see Comment, "Alternatives to the Strike in Public Labor Relations," 85 Harv. L. Rev. 459 (Dec. 1971).
Judgment accordingly.